Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 011524
Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:   (602) 252-7400
Facsimile:    (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Lisa Farnsworth*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Lisa Farnsworth<br><br>        Plaintiff,<br><br>   v.<br><br>Life Insurance Company of North America; The Receivable Management Services Corporation; The Receivable Management Services Corporation Disability Plan,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Lisa Farnsworth (hereinafter referred to as "Plaintiff"), by and through her attorneys, Scott E. Davis and Scott M. Harris, and complaining against the Defendants, she states:

## *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

## *Parties*

2. Plaintiff is a resident of Pima County, Arizona.

3. Upon information and belief, The Receivable Management Services Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Life Insurance Company of North America (hereinafter referred to as "LINA"). The specific LINA group disability policy is known as Group Policy No.: LK0030526 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the LINA policy was to provide disability insurance for its employees. Upon information and belief, the LINA policy may have been included in and part of an employee benefit plan, which may have been named The Receivable Management Services Corporation Disability Plan (hereinafter referred to as the "Plan") and was created to provide the Company's employees with welfare benefits. At all times relevant

hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.  Upon information and belief, LINA functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

5.  Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit*, LINA's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her disability benefits.  When LINA denied Plaintiff's disability claim, it saved a significant sum of money.

6.  The Company, LINA and the Plan conduct business within Pima County and all events giving rise to this Complaint occurred within Pima County.

*Venue*

7.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8.  Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about March 16, 2010 due to serious medical conditions and was unable to work in her designated occupation as an Executive Director. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to work in any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved, paid and have been exhausted. Plaintiff then filed for long term disability benefits under the relevant policy which was administered by LINA, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant LINA policy and definition of disability governing Plaintiff's long term disability claim is as follows:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

- unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; and
- unable to earn 80% or more of his or her Covered Earnings from working in his or her Regular Occupation.

After Disability Benefits have been paid for 12 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

- unable to perform all the material duties of any occupation for which her or she is, or may reasonably become, qualified for based on education, training, or experience; and
- unable to earn 80% or more of his or her Indexed Earnings."

12. In support of her claim for long term disability benefits, Plaintiff submitted to LINA medical, vocational and lay witness evidence supporting her disability as defined by the relevant LINA policy.

13. LINA approved Plaintiff's long term disability claim and paid Plaintiff long term disability benefits for the period of June 14, 2010 through November 13, 2012.

14. Despite the objective medical and lay witness evidence supporting Plaintiff's claim for long term disability benefits under the relevant LINA policy, as part of a review of Plaintiff's claim, LINA referred her to a medical examination with a physician that it chose. After a superficial examination with a physician who Plaintiff believes is regularly retained by the insurance industry, the handpicked physician opined Plaintiff was able to engage in a gainful occupation and was not disabled. Thereafter, in a letter dated November 8, 2012, LINA notified Plaintiff it was terminating her long term disability benefits beyond November 13, 2012.

15. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the November 8, 2012 termination of her long term disability benefits and in support of her appeal, Plaintiff submitted additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant LINA policy.

16. In support of her appeal, Plaintiff submitted to LINA a narrative letter dated April 26, 2013 from her current treating board certified physician, who opined, "Unfortunately, given her age, chronicity of these medical conditions, and surgical history it is reasonable to assume [Plaintiff] will be unable to sustain any gainful employment for an indefinite period."

17. Further supporting her appeal, Plaintiff submitted to LINA a vocational report from a certified vocational expert dated May 31, 2013, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "…[Plaintiff] fully meets the strict criteria put forth in her disability policy or any policy that concerns itself with disability."

18. In addition to the medical records and reports submitted to LINA, Plaintiff submitted three sworn affidavits from herself and her roommate who confirmed Plaintiff is unable to work in any occupation and her medical condition has not improved in any way since her date of disability.

19. As part of its review of Plaintiff's claim for long term disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing.

20. Upon information and belief, Plaintiff believes the reviewing physician is a long time medical consultant for the disability insurance industry and LINA. As a result, Plaintiff believes the reviewing physician may have an incentive to protect his/her own consulting relationships with the disability insurance industry and LINA by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

21. In a letter dated June 7, 2013, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity to provide these reviews to her treating physicians for their response prior to LINA rendering a determination in her claim.

22. In a letter dated August 23, 2013, LINA notified Plaintiff it had denied her claim for long term disability benefits under the policy.

23. Prior to its August 23, 2013 denial, LINA never shared with Plaintiff the report authored by the reviewing physician and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the report and/or perfect her claim. LINA's failure to provide Plaintiff with the opportunity to respond to the report

precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

24. In a letter dated August 23, 2013, LINA notified Plaintiff it had denied her claim for long term disability benefits under the policy.

25. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the August 23, 2013 denial of her long term disability benefits and in support of her appeal, Plaintiff submitted additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant LINA policy.

26. In support of her appeal, Plaintiff submitted to LINA a narrative letter dated March 27, 2014 from her current treating board certified physician who opined, "…it is my opinion [Plaintiff] is permanently disabled."

27. Plaintiff submitted to LINA a Functional Capacity Evaluation report dated March 5, 2014 wherein after an extensive evaluation, a qualified physical therapist determined, "…[Plaintiff] is unable to perform the physical demands of any type of work including SEDENTARY work on a regular and consistent basis" (original emphasis).

28. Plaintiff also submitted a February 4, 2014 neurobehavioral evaluation from a medical professional who concluded after an extensive evaluation of Plaintiff and her medical conditions, "[Plaintiff is a responsible individual with a high motivation to work, but unfortunately her medical condition does not allow it. [Plaintiff] continues to be permanently disabled."

29. Further supporting her appeal, Plaintiff submitted an addendum vocational report from a certified vocational expert dated April 30, 2014, who after again reviewing Plaintiff's medical evidence concluded, "At this time, my opinion regarding [Plaintiff's]

-7-

ability to engage in any employment has not changed…it is my vocational opinion that [Plaintiff] meets any definition of disability set forth in the Cigna policy."

30. As part of its review of Plaintiff's claim for disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from Dr. Leonard Sonne.

31. Upon information and belief, Plaintiff believes Dr. Sonne may be a long time medical consultant for the disability insurance industry and LINA. As a result, Plaintiff believes Dr. Sonne may have an incentive to protect his own consulting relationships with the disability insurance industry and LINA by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

32. In a letter dated April 17, 2014, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity to provide these reviews to her treating physicians for their response prior to LINA rendering a final determination in her claim.

33. Prior to its July 14, 2014 final denial, LINA never shared with Plaintiff the report authored by Dr. Sonne and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the report and/or perfect her claim. LINA's failure to provide Plaintiff with the opportunity to respond to the report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

34. In a letter dated July 14, 2014, LINA notified Plaintiff it had denied her claim for long term disability benefits under the policy. LINA informed Plaintiff in its July 14,

2014 letter she had exhausted all administrative levels of appeal and could file a civil action lawsuit at this time.

35. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in her best interests and other participants" which it failed to do. [1]

36. LINA failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. LINA's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

37. Plaintiff believes LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1 impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

38. Plaintiff further believes the reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles LINA undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Company and/or Plan retained LINA to insure and administer Plaintiff's disability claim.

39. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINA and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and any ERISA procedural violation which may have impacted or influenced LINA's decision to deny her claim.

40. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by LINA as referenced herein are so flagrant they justify *de novo* review.

41. As a direct result of LINA's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.  Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance

coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

42. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

43. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the LINA policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 23rd day of September, 2014.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff